IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:20-cv-1342-RM-STV**

WILDEARTH GUARDIANS,
SIERRA CLUB,
CENTER FOR BIOLOGICAL DIVERSITY
and
HIGH COUNTRY CONSERVATION ADVOCATES,

    Plaintiffs,

v.

MOUNTAIN COAL COMPANY, and
ARCH COAL INC.,

    Defendants.

**MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)
BASED ON THE STATUTE OF LIMITATIONS**

    Defendants Mountain Coal Co. and Arch Coal, Inc.[1] (collectively, "Arch"), through undersigned counsel, respectfully file this Motion to Dismiss the Complaint Pursuant to F.R.C.P. 12(b)(6) Based on the Statute of Limitations.

## INTRODUCTION

    The five-year statute of limitations in 28 U.S.C. § 2462 (2018) applies to citizen suits under the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq.* (2018), and it begins to run when a claim first accrues regardless of whether the alleged violation continues. *Sierra Club v. Oklahoma Gas*

---

[1] Arch Coal, Inc. (f.k.a. Arch Mineral Corporation) is now known as Arch Resources, Inc. A motion to change the caption to reflect the new entity name is forthcoming.

*& Electric Co.*, 816 F.3d 666, 672-73 (10th Cir. 2016).  Plaintiffs assert two CAA claims alleging that Arch was required "to secure a PSD construction permit and obtain a Title V operating permit before constructing and operating the Mine" at issue ("West Elk Mine").  Compl. ¶ A.  The West Elk Mine "opened in 1981 and mining began in 1982."  Compl. ¶ 39.  Accordingly, both of Plaintiffs' claims first accrued decades ago.  The Court should therefore dismiss the May 12, 2020 Complaint as time barred.

## RELEVANT FACTUAL ALLEGATIONS

The following facts and dates alleged in the Complaint establish that the claims are time-barred:  "The [West Elk] Mine is an underground coal mine.  It opened in 1981 and mining began in 1982."  Compl. ¶ 39.  Arch's predecessor constructed and permitted the West Elk Mine to extract coal from six different coal seams known as the A through F seams.  Compl. ¶¶ 25, 42.  Arch's predecessor started mining the shallow F seam for the first decade of mining and then moved to the deeper B seam.  Compl. ¶¶ 25, 43-45.  The West Elk Mine began using the longwall-mining method to extract coal from the deeper B Seam in 1992, which is the method still being used today.  Compl. ¶ 44.  When Arch acquired the West Elk Mine in 1998, Compl. ¶ 25, it continued to mine the B seam for another decade before moving to the E seam in 2008 where it is still mining today.  Compl. ¶¶ 45, 47.

The following facts and dates alleged in the Complaint establish there can be no excuse for the long delay in filing the Complaint:  The West Elk "Mine's highest coal production occurred over the same four-year period (2011-2014) as the Mine's highest annual rate of VOC and methane emissions."  Compl.. at ¶ 73.  Plaintiffs certainly knew of the alleged violations by 2014.  Compl., Ex. 1, 10 (Doc. # 1, 40) (citing *High Country Conservation Advocates v U.S. Forest Service*, 52

F.Supp.3d 1174, 1194 (D. Colo. 2014) ("*HCCA I*") wherein the parties previously litigated the West Elk Mine's alleged volatile organic compounds ("VOC") emissions.).[2] In the prior litigation, Plaintiffs asserted as follows regarding the mine ventilation boreholes that Plaintiffs refer to here as methane drainage wells:

> The data suggest that VOC emissions from such wells may be significant. When one extrapolates the levels for hexane and propane from these two samples to an annual basis using reasonable assumptions, hexane emissions may exceed two tons, above the state level for permitting and reporting hazardous air pollutants, and propane emissions may exceed 100 tons, a level that could subject the West Elk mine to more rigorous permitting under Title V of the Clean Air Act.

Pl.'s Opening Br. on the Merits, 53 (Doc. # 62, 65), *High Country Conservation Advocate v U.S. Forest Service,* Case No. 1:13-cv-01723-RBJ, 2014 WL 8734112 (D. Colo. Mar. 20, 2014).[3] Yet, Plaintiffs waited another six years, until May 12, 2020, to file the Complaint.

## LEGAL STANDARD

A statute of limitations defense "may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club*, 816 F.3d at 671. In ruling on a motion to dismiss, a court may consider the complaint's allegations and exhibits as well as other documents referenced in the

---

[2] Plaintiffs High Country Conservation Advocates, WildEarth Guardians, and Sierra Club filed that prior case in 2013 against various federal defendants, and Mountain Coal Company and a related Arch entity were permitted to intervene as additional defendants before briefing on the merits. *Id*. at 1184 ("Arch Coal's motion to intervene as a defendant was granted on July 8, 2013.").

[3] A court may "take judicial notice of its own files and records, as well as facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006) (quoting *Van Woudenberg ex rel. Foor v. Gibson,* 211 F.3d 560, 568 (10th Cir. 2000)). The fact that Plaintiffs were able to assert six years ago that the West Elk Mine violated CAA emission limits is what matters here—not whether the claim is true. The fact Plaintiffs knew (or thought they knew) of the alleged violations in 2014 is therefore properly subject to judicial notice. *Id.*

complaint. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997). "Further, once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to Plaintiff to establish a later accrual date of the statute of limitations." *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1287 (D. Colo. 2009) (citing *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

Moreover, a complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## ANALYSIS

**I. Section 2462 bars the Complaint's two claims against the West Elk Mine, which was constructed and began operations decades ago, because these claims were filed more than five years after they <u>first</u> accrued.**

Both claims in the Complaint are time barred. The statute of limitations applicable to both provides as follows:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same time period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462. The Tenth Circuit has unequivocally determined that Section 2462 applies to CAA citizen suits. *Sierra Club*, 816 F.3d at 670. "Because the CAA does not specify a statute of limitations for bringing a citizen suit for civil penalties, the default five-year statute of limitations

4

for civil penalties, fines, and forfeitures under federal law applies." *Id.* (citing 28 U.S.C. § 2462). "[E]quitable remedies based on the same facts are barred as well" by the concurrent remedies doctrine. *Id.* at 676. Hence, a CAA "claim is barred if suit is not brought within five years of the date the claim first accrues." *Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir. 2007).

Under Section 2462, a "claim first accrues on the date that a violation first occurs." *Id.* This Court has previously distinguished a Colorado statute of limitations from Section 2462 by noting that in *Sierra Club*, which addressed Section 2462, "the claim first accrued on day one of unpermitted construction." *Colorado Dep't of Pub. Health & Env't, Hazardous Materials & Waste Mgmt. Div. v. United States*, 381 F. Supp. 3d 1300, 1311 (D. Colo. 2019). "In other words, a [CAA] claim accrues as soon as 'the plaintiff can file suit and obtain relief.'" *Sierra Club*, 816 F.3d at 673 (quoting *Heimeshoff v. Hartford Life & Accident Ins. Co.,* 571 U.S. 99, 105 (2013)).

While the specific CAA violation before the court in *Sierra Club* was a PSD construction permit violation, the court declined to limit its holding to an interpretation of the substantive CAA requirements for a PSD permit. 816 F.3d at 671-72 (declining to address the defendant's argument that failing to obtain the permit before construction was a one-time violation on the day construction began). The dissent faulted the majority for declining to "draw a principled line between the end of construction and the subsequent operation of a source." *Id.* at 677 (Briscoe, J., dissenting). But, because the court declined to narrowly interpret the substantive requirements under the CAA to thereby avoid interpreting the statute of limitations as other circuit courts have, the court's opinion in *Sierra Club* is broadly applicable to any CAA claim as they are all governed by the same statute of limitations. *See id.* at 670.

5

Like construction, which the Tenth Circuit described as "an ongoing project," subsequent operation of a facility is also an ongoing project. *See id.* at 672. Accordingly, the court in *Grand Canyon Trust v. Energy Fuels Resources (U.S.A.) Inc.* relied on *Sierra Club* to dismiss claims related to the operation of uranium mill tailings impoundments on statute of limitations grounds because the impoundments that were allegedly operating in violation of CAA radon emission standards had been operating as such for decades. 269 F. Supp. 3d 1173, 1194 (D. Utah 2017). Hence, a claim that a party has failed to obtain a CAA permit, whether it is a PSD construction permit or Title V operating permit, is barred if brought more than five years after the activity requiring the permit started because plaintiff "could have brought suit for the [] permit violation on the first day." *Sierra Club*, 816 F.3d at 673.

Here, the Complaint alleges the West Elk Mine "opened in 1981 and mining began in 1982," Compl. ¶ 39, and it claims relief based on the assertion that Defendants "are required by [the CAA and Colorado's state implementation plan] to secure a PSD construction permit and obtain a Title V operating permit *before constructing and operating* the Mine," Compl. ¶ A (emphasis added). These claims, as pled, first accrued when the West Elk Mine was constructed and began operations in 1981-82.[4] *Sierra Club*, 816 F.3d at 673. The five-year limitations period within which to assert the two claims presented in the Complaint therefore ended by 1986 and 1987, respectively. 28 U.S.C. § 2462. Hence, the claims in the Complaint are now barred by the statute of limitations. *Sierra Club*, 816 F.3d at 676 (both legal and equitable claims are barred).

---

[4] For the purpose of this Motion, Arch seeks dismissal of the two claims as pled because they are untimely. They are, however, also facially unmeritorious in part. Arch did not construct the West Elk Mine or even own it until 1998. Compl. ¶ 25. Moreover, Plaintiffs allege "EPA approved Colorado's Title V operating permitting program on October 16, 2000." Compl. ¶ 36.

### II. Plaintiffs cannot meet their burden to establish a later accrual date or otherwise toll the statute of limitations.

Plaintiffs have the burden to "establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date" if they seek to avoid the statute of limitations. *Escobar*, 668 F. Supp. 2d at 1287 (citing *Aldrich*, 627 F.2d at 1041 n. 4). There are a number of allegations sprinkled throughout the Complaint that appear aimed at attempting to resurrect the stale claims asserted therein. They all fail to meet Plaintiffs' burden.

#### A. *Section 2462's limitations period is not tolled even if the alleged violation is continuing.*

The Complaint alleges that "[e]ach and every day" mining continues constitutes "a separate and distinct violation" and that the "violations will remain ongoing." Compl. ¶ 81 (asserting this with respect to the PSD construction permit claim); Compl. ¶ 86 (same for Title V operating permit claim). But, in *Sierra Club*, the Tenth Circuit expressly rejected both of these related bases for arguing the limitations period should be tolled.

First, the court rejected the each day is a new violation theory for tolling because "[i]f the limitations period under § 2462 reset each day, the statutory term 'first' would have no operative force." *Sierra Club*, 816 F.3d at 674. Instead the Tenth Circuit concluded "the clock under § 2462 begins only once, when a claim *first* accrues." *Id.* at 673-74.

Second, the court rejected the continuing violation theory of tolling because the statute of limitations starts to run when a claim *first accrues*, and the claim first accrues when "the conduct that has already occurred is sufficient to support a claim." *Id.* at 673. The claim may therefore accrue before the last act of the alleged violation. *Id.* In *Sierra Club*, the court assumed, without deciding, that the alleged violation of failing to obtain a PSD permit continued for the duration of construction. *Id.* at 671-72. Nevertheless, it held the claim was time-barred because construction

started outside the limitations period, and "[t]he specific statute of limitations at issue begins to run when a claim '*first* accrue[s].'" *Id.* at 672–73 (quoting 28 U.S.C. § 2462 (emphasis added by the court)). That is, "on day one of unpermitted construction." *Colorado Dep't of Pub. Health & Env't, Hazardous Materials & Waste Mgmt. Div.*, 381 F. Supp. at 1311 (citing *Sierra Club*, 816 F.3d at 672). Accordingly, if the unpermitted activity started outside the limitations period, a claim that it required a CAA permit is barred "even if the violation continued until some later date." *Sierra Club*, 816 F.3d at 673.

Subsequent decisions in the Tenth Circuit have consistently followed *Sierra Club* by holding that "the essential feature of § 2462 was that it speaks in terms of when a cause of action *first* accrues." *S.E.C. v. Kokesh*, 884 F.3d 979, 982 & 985 (10th Cir. 2018) (emphasis in original) (noting that *Sierra Club* concerns "a continuing omission to act in compliance with a duty" to obtain a permit). It does not matter—for limitations purposes—whether the alleged violation is continuing or reoccurring each day because, "[u]nder § 2462, the limitations period begins to run when a claim '*first* accrues,' regardless of whether it continues to 'reaccrue.'" *HEAL Utah v. PacifiCorp*, 375 F. Supp. 3d 1231, 1248–49 (D. Utah 2019). In other words, a continuing violation "does not reset § 2462's statutory clock" each day because otherwise "the statute of limitations would provide no limit at all." *Id.* at 1249.

Here, like in *Sierra Club* where construction began outside but continued inside the limitations period, the Complaint alleges that the West Elk Mine began construction and operations decades outside the limitations period. Compl. ¶ 39; *Sierra Club*, 816 F.3d at 672-73. On such facts, the Tenth Circuit unequivocally held that "the clock under § 2462 begins only once, when a claim *first* accrues." *Sierra Club*, 816 F.3d at 673-74. The claims alleged here therefore accrued

8

when the alleged violation began "regardless of whether [they] continue[] to 'reaccrue.'" *HEAL Utah*, 375 F. Supp. 3d at 1248–49.

This result applies to both the PSD construction permit claim and the Title V operating permit claim. *See Grand Canyon Trust*, 269 F. Supp. 3d at 1194 (dismissing CAA claims for continuing operations allegedly in violation of the CAA National Emission Standards for Radon Emissions from Operating Mill Tailings.). Like the continuing operations of decades' old tailings impoundments allegedly in violation of the CAA in *Grand Canyon Trust*, 269 F. Supp. 3d at 1194, the claims asserted here allege the West Elk Mine has been operating in alleged violation of the CAA for decades, Compl. ¶¶ 1, 39. Consequently, the claims here are similarly barred by the statute of limitations because both construction and operations began decades outside the limitations period even if they continue to this day. *Grand Canyon Trust*, 269 F. Supp. 3d at 1192.

### B. *Section 2462's limitations period is not tolled by the discovery doctrine.*

The discovery doctrine—whereby certain statutes of limitations are tolled until plaintiff knew or should have known sufficient facts to assert a claim—does not apply here because CAA citizen suit claims accrue on the date the alleged violation first occurs. *3M Co. (Minnesota Min. & Mfg.) v. Browner*, 17 F.3d 1453, 1462 (D.C. Cir. 1994) (holding, after a historical review of Section 2462 and its predecessors, that Congress "could not possibly have intended the word [accrue] to incorporate any discovery of violation rule."). Hence, as "in *Sierra Club*, [the limitations period] begin[s] to run when the claim *first* accrues, not when Plaintiff knew or should have known about it." *Colorado Dep't of Pub. Health & Env't, Hazardous Materials & Waste Mgmt. Div.*, 381 F. Supp. 3d at 1315 (interpreting a statute of limitations "nearly identical to the statutory language analyzed in *Sierra Club*.").

Accordingly, the limitations period for Plaintiffs' claims cannot be tolled by the discovery doctrine because it began to run when those claims first accrued rather than when Plaintiffs knew or should have known about their claims. *Id.* Regardless, Plaintiffs knew or should have known about the alleged violations long ago. Plaintiffs have actively litigated against Arch to stop the West Elk Mine since 2009, and based, at least in part, on the alleged VOC emissions since 2013-14. *See HCCA I*; note 5 *infra*. Accordingly, the statute of limitations cannot be tolled by the discovery doctrine because it does not apply and Plaintiffs had sufficient information to file their claims years ago.

### C. The scattered allegations regarding the so-called "expansion" fail to raise an issue that would preclude dismissal.

In an apparent attempt to resurrect the stale PSD permit claim, the Complaint includes a number of inconsistent and confusing allegations concerning an "expansion." *See, e.g.*, Compl. ¶ 47 ("mining in the Expansion area began in January 2020."). The Complaint does not, however, assert a separate claim for the alleged "expansion," and none of the requested relief relates thereto.[5] Compl. p. 28 (requesting various relief with respect to the entire West Elk Mine only).

---

[5] Instead, Plaintiffs sought and continue to seek relief against the "expansion" in other cases wherein Mountain Coal is an intervenor-defendant, including the following: (1) *WildEarth Guardians v. U.S. Forest Serv.*, 828 F. Supp. 2d 1223, 1240 (D. Colo. 2011) wherein Plaintiff WildEarth Guardians unsuccessfully challenged the federal government's alleged failure to fully analyze "the mine's expansion's methane emissions."; (2) *HCCA I*, discussed on pages 2-3 *supra*, wherein plaintiffs successfully challenged the lease modifications referred to herein as the "Expansion" based in part on VOCs; (3) *High Country Conservation Advocates v. United States Forest Service*, 333 F. Supp. 3d 1107 (D. Colo. 2018) ("*HCCA II*"), *affirmed in part, rev'd in part*, 951 F.3d 1217 (10th Cir. 2020) wherein Plaintiffs in this case and Wilderness Workshop unsuccessfully challenged the lease modifications that were reinstated upon further analysis after *HCCA I*; (4) *WildEarth Guardians v. Bernhardt*, 423 F. Supp. 3d. 1083 (D. Colo. 2019) wherein Plaintiffs and Wilderness Workshop challenged the mine plan for the alleged "expansion" after the district court's decision in *HCCA II*.

Should Plaintiffs nevertheless argue that their disparate "expansion" allegations sufficiently assert an unpled third claim, the Court should dismiss such claim as well. The Complaint references two mutually exclusive regulatory bases for asserting that the "expansion" may trigger a new PSD construction permit requirement. Compl., Ex. 1, 3-4 (Doc. # 1, 33-34) (explaining that the two triggers for a major source PSD construction permit are Section 1001-5:3D.II.A.23, which defines a major modification, and Section 1001-5:3D.II.A.25.c, which defines a physical change to a minor source that is itself a major source); Compl. ¶ 32 (referring to "new major stationary" sources and a "major modification."); Compl. ¶ 78 ("[a]ny new major stationary or major modification" requires a PSD permit). These regulatory bases for a third unpled claim are mutually exclusive. The first addresses "physical change in or change in method of operation of a major stationary source." 5 C.C.R. § 1001-5:3D.II.A.23. It applies only to an existing "major stationary source." *Id.* The second regulation addresses "physical change that would occur at a stationary source not otherwise qualifying as a major stationary source." 5 C.C.R. § 1001-5:3D.II.A.25.c. It applies only to "a stationary source not otherwise qualifying as a major stationary source." *Id.* Because the Complaint does not in fact plead a separate claim for the "expansion," it is unclear what it intends to assert by referencing these two mutually exclusive regulations. Regardless, any unpled claim based thereon fails.

Not only is a potential claim based on Section 1001-5:3D.II.A.25.c. mutually exclusive of a potential claim based on Section 1001-5:3D.II.A.23, it is also mutually exclusive of the claims actually asserted in the Complaint. The Complaint alleges that the West Elk Mine's 2019 "pre-expansion" emissions "exceed[] the major source PSD 250 tons-per-year threshold." Compl. ¶ 67. Likewise, the Complaint alleges that the West Elk Mine's highest emissions were in 2011-14.

11

Compl. ¶ 73. The Court must therefore assume that it is true that the West Elk Mine emitted sufficient VOCs before the alleged "expansion" to be a major source. *Iqbal*, 556 U.S. at 678. Hence, 1001-5:3D.II.A.25.c. does not apply to the facts alleged in the Complaint.[6]

Any unpled claim based on Section 1001-5:3D.II.A.23 also fails because it defines a "major modification" that requires a new PSD construction permits as follows:

> Any physical change in or change in the method of operation of a major stationary source that would result in a significant emissions increase of a regulated NSR pollutant and a significant net emissions increase of that pollutant from the major stationary source.

5 C.C.R. § 1001-5:3D.II.A.23. "Net emissions increase" is defined as the amount by which the sum of the following two exceeds zero: (i) "The increase in actual emissions from a particular physical change or change in the method of operation at a stationary source…;" and (ii) "Any other increases and decreases in actual emissions at the major stationary source that are contemporaneous with the particular change and are otherwise creditable." 5 C.C.R. § 1001-5:3D.II.A.27. "Actual emissions" as relevant in a PSD netting analysis, "as of a particular date shall equal the average rate, in tons per year, at which the unit actually emitted the pollutant during a consecutive twenty-four month period that precedes the particular date and is representative of normal unit operation." 5 C.C.R. § 1001-5:3D.II.A.1.a. Finally, changes in emissions are determined based on the "average rate, in tons per year, at which the emissions unit actually emitted the pollutant during any consecutive twenty-four month period selected by the owner or

---

[6] To the extent Plaintiffs attempt to avoid the consequences of their factual allegations by asserting that the West Elk Mine was a minor source until the alleged "expansion," the Court should dismiss the First Claim for Relief on the merits because Plaintiffs allege that emissions were higher before the alleged "expansion" so the "expansion" cannot be a major source if the West Elk Mine was not a major source before. Compl. ¶¶ 49, 68, 70.

operator within the ten year period immediately preceding either the date the owner or operator begins actual construction of the project . . . ."  5 CCR § 1001-5:3D.II.A.4.b.

Assuming, *arguendo*, the Complaint alleges a physical change,[7] the alleged "expansion" is still not a "major modification" requiring a new PSD construction permit because the Complaint does not allege that it resulted in a "net emissions increase."  To the contrary, the Complaint alleges that mining the expansion in the E seam results in an emissions *decrease* compared to prior mining in the existing B seam.  Compl. ¶ 49 ("There are more VOCs and methane gasses in the deeper coal seams [such as the B seam] as compared to the shallower seams," such as the E seam.); Compl. ¶ 70 ("E seam mining will generate 50 to 60 percent less methane than B-seam mining.")  And, there is no allegation in the Complaint that emissions are greater from mining in that portion of the E seam that is located in the "expansion area" compared to mining that portion of the E seam that is located in the original mining area, which has been mined since 2008.  *See* Compl. ¶ 73 ("The Mine's highest coal production occurred over the same four-year period (2011-2014) as the Mine's highest annual rate of VOC and methane emissions.").  Hence, the factual allegations in the Complaint do not—even if presumed true—state a claim for failure to obtain a PSD construction permit for the "expansion."  5 C.C.R. § 1001-5:3D.II.A.23 (PSD construction permit is only needed for a modification of a major source if the modification results in a "significant net emissions increase").

---

[7] The Complaint defines the "Expansion" as Defendants' "authorization to expand two of the seven federal coal leases (the 'Expansion')."  Compl. ¶ 46.  Amending coal leases is not "a physical change" in the plant or method of operations.  *See New York v. E.P.A.*, 443 F.3d 880, 888 (D.C. Cir. 2006) (Holding "physical change" is limited by ordinary usage of the phrase); *United States v. Cinergy Corp.*, 458 F.3d 705, 711 (7th Cir. 2006) (Holding that the CAA defines "a modification as a physical change in a plant.").

13

Moreover, none of the disparate "expansion" allegations in the Complaint are made in or related to the Title V operating permit claim. Compl. ¶¶ 82-86. Even if the alleged "expansion" would require a PSD construction permit, there is no Title V operating permit claim at this time. The Complaint alleges mining began in the expansion in January, 2020. Compl. ¶ 47. The Title V regulations, however, only require that operators "shall submit an application for such a permit no later than twelve months after the source becomes subject to the operating permit requirement." 5 C.C.R. § 1001-5:3C.III.B.2. Hence, the expansion allegations can neither resurrect the stale Title V operating permit claim for the original West Elk Mine nor establish a basis for a new Title V claim for the alleged "expansion" because such claim would be unripe.

Accordingly, all claims in the Complaint are barred by the statute of limitations, and Plaintiffs cannot meet their burden to establish a later accrual date or that the limitations period should be tolled.

### III. The PSD construction permit claim fails for the additional reason that the alleged obligation to obtain such permit is a stale one-time pre-construction obligation.

While the Tenth Circuit approached the limitations question in *Sierra Club* by interpreting the statute of limitations itself, other courts have reached the same result with respect to PSD construction permit claims by interpreting the substantive requirements of the CAA instead. The Seventh Circuit recently explained that the obligation to obtain a PSD construction permit is a one-time pre-construction obligation, which refutes any continuing violation argument for tolling:

> The continuing-violation argument is that every day a plant operates without a § 7475 [PSD] permit is a fresh violation of the Clean Air Act. Congress sometimes writes regulatory statutes that way, but § 7475 is not among them . . . . The violation is complete when construction commences without a permit in hand. Nothing in the text of § 7475 even hints at the possibility that a fresh violation occurs every day until the end of the universe if an owner that lacks a construction permit operates a completed facility.

*United States v. Midwest Generation, LLC*, 720 F.3d 644, 647 (7th Cir. 2013).  This is the near unanimous approach among the circuit courts that have considered the issue.  *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 284–85 (3d Cir. 2013) (Holding that the obligation to obtain a PSD construction permit is a one-time obligation, and citing seventh, eighth, and eleventh circuit precedents for the proposition that this is the "unanimous view of the other courts of appeals that have addressed this question.").[8]  Hence, the majority rule is that the substantive obligation to obtain a PSD construction permit is a one-time pre-construction obligation.

As a result, "the Clean Air Act protects [the] reasonable investment expectations" of successors by precluding PSD claims after five years.  *EME Homer City Generation, L.P.*, 727 F.3d at 289; *see also Arch Mineral Corp. v. Babbitt*, 104 F.3d 660, 670 (4th Cir. 1997) (holding that penalties cannot be imposed on a successor in interest if the predecessor's violation occurred outside limitations period in Section 2462). "Once the statute of limitations expired, [the new owner is] entitled to proceed as if it possessed all required construction permits.*"  Midwest Generation, LLC*, 720 F.3d at 648.  That is, a new owner is not obligated to obtain a PSD construction permit even if the prior owner failed to obtain one before constructing the facility. Obtaining a PSD construction permit was the obligation of the owner at the time of construction, and a successor cannot be held liable for a failure to obtain such permit—certainly not once the limitations period has expired.  *Id*.

---

[8] *But see Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 480 F.3d 410, 419 (6th Cir. 2007) (Holding that under the unique wording of Tennessee's state implementation plan, the obligation to obtain a PSD operating permit is an ongoing obligation.)

The majority rule is consistent with, and reaches the same result as, the Tenth Circuit's decision in *Sierra Club*, albeit through a different analytical approach.  While the Tenth Circuit declined in *Sierra Club* to decide whether a lack of a PSD construction permit is a continuing violation by assuming without deciding that the obligation is continuing, there is no reason to believe it would deviate from the majority approach if and when it addresses the issue.  *See* 816 F.3d at 671-72.  Hence, this Court should follow the majority approach of interpreting the requirement to obtain a PSD construction permit as a one-time pre-construction obligation.

Accordingly, the Court should dismiss the PSD construction permit claim for the additional reason that the obligation to obtain a PSD construction permit for the West Elk Mine was a one-time obligation imposed on Arch's predecessor—not Arch.  The West Elk Mine was constructed in 1981-82.  Compl. ¶ 39.  The obligation to obtain a PSD construction permit was therefore, under the majority rule, a one-time obligation at that time.[9]  *Midwest Generation, LLC*, 720 F.3d at 647.  Arch, however, did not acquire the West Elk Mine until 1998.  Compl. ¶ 25.  Hence, it was not Arch's obligation to obtain a PSD construction permit.  *EME Homer City Generation, L.P.*, 727 F.3d at 290–91.  Nor is Arch liable for its predecessor's failure to obtain a PSD construction permit.  *Midwest Generation, LLC*, 720 F.3d at 648.

Rather, the Clean Air Act protects Arch's reasonable investment expectations because more than five years had passed when it acquired the West Elk Mine.  *EME Homer City Generation, L.P.*, 727 F.3d at 289.  In fact, shortly before Arch acquired the West Elk Mine it

---

[9] Unlike the later Title V permit requirement, the requirement to obtain a PSD permit was in effect by 1981.  Clean Air Act Amendments of 1977, Pub. L. No. 95-95 § 165, 91 Stat. 685, 735 (1977) (codified at 42 U.S.C. § 7475(a)); 45 Fed. Reg. 52676 (August 7, 1980) ("The regulatory amendments [to the PSD program] come into effect on August 7, 1980.").

obtained a declaratory judgment against the federal government, in connection with its acquisition of a different mine, declaring that Arch could not be punished for a predecessor's alleged mining permit violations outside the limitations period in Section 2462. *Arch Mineral Corp.*, 104 F.3d at 670. Accordingly, Arch cannot be held liable for its predecessor's alleged failure to obtain a PSD construction permit before its predecessor constructed the West Elk Mine because such claims are long barred by the statute of limitations. *Midwest Generation, LLC*, 720 F.3d 644.

## CONCLUSION

The Court should dismiss the First Claim for Relief for constructing and operating the West Elk Mine without a PSD permit because the claim accrued decades ago and is therefore now barred by the five-year statute of limitations regardless of whether the Court analyzes the issue based on the statute of limitations itself, as the Tenth Circuit does, or based on the nature of the substantive obligation imposed by the CAA, as most other circuits do. Either way, the PSD construction permit claim is time-barred.

The Court should also dismiss Plaintiffs' Second Claim for Relief for operating the West Elk Mine without a Title V permit because that claim similarly accrued decades ago under the analytical approach in controlling Tenth Circuit precedent, so this claim is likewise barred by the same five-year statute of limitations.

WHEREFORE, the Court should dismiss the Complaint with prejudice pursuant to F.R.C.P. 12(b)(6).

Respectfully submitted this 14th day of July, 2020.

            WELBORN SULLIVAN MECK & TOOLEY, P.C.:

            *s/ Keith D. Tooley*
            Keith D. Tooley, #16243
            James W. Sanderson, #2402
            Julie A. Rosen, #40406
            Jens Jensen, #47471
            Welborn Sullivan Meck & Tooley, P.C.
            1125 - 17th Street, Suite 2200
            Denver, CO  80202
            Telephone:  303-830-2500
            Fax:  303-832-2366
            Email: ktooley@wsmtlaw.com
               jsanderson@wsmtlaw.com
               jrosen@wsmtlaw.com
               jjensen@wsmtlaw.com

            *ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

   I hereby certify that on July 14, 2020, I caused a true and correct copy of the foregoing **MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) BASED ON THE STATUTE OF LIMITATIONS** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

Neil Levin, Esq.
Public Justice
4404 Alcott Street
Denver, CO  80211

David Nicholas, Esq.
20 Whitney Road
Newton, MA  02460

*Attorneys for Plaintiffs*

            *s/ Lesley J. Hayter*
            Lesley J. Hayter