IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.  1:20-cv-1342-RM-STV**

WILDEARTH GUARDIANS,
SIERRA CLUB,
CENTER FOR BIOLOGICAL DIVERSITY,
and
HIGH COUNTRY CONSERVATION ADVOCATES,

    Plaintiffs,

v.

MOUNTAIN COAL COMPANY, and
ARCH RESOURCES, INC.,

    Defendants.

---

**BRIEF OF AMICUS CURIAE COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT, AIR POLLUTION CONTROL DIVISION**

---

**TABLE OF CONTENTS**

INTEREST OF AMICUS CURIAE .............................................................................................. 1

SUMMARY OF ARGUMENT ..................................................................................................... 2

ARGUMENT .................................................................................................................................. 5

    I.    THE PLAINTIFFS' PSD CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS ................................................................................................................ 5

    II.    PLAINTIFFS' TITLE V CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS ................................................................................................................ 7

        A.    Title V Requirements in Colorado ..................................................................... 7

        B.    The resolution of the timeliness of Plaintiffs' Title V claim is not controlled by *Sierra Club* ................................................................................................................................ 9

    III.    THE FEDERAL STATUTE OF LIMITATIONS DIFFERS FROM COLORADO'S STATUTE OF LIMITATIONS .............................................................................................. 11

# **TABLE OF AUTHORITIES**

**CASES**

*Citizens for Clean Air & Water in Pueblo & S. Colorado v. Colorado Dep't of Pub. Health & Env't, Air Pollution Control Div.*,
   181 P.3d 393 (Colo. App. 2008) ................................................................................ 9

*Colo. Dept. of Public Health and Environment, Hazardous Materials and Waste Management Division v. U.S. et al.*,
   381 F.Supp.3d 1300 (D. Colo. 2019) ...................................................................... 11

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ................................................................................................ 12

*Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Authority*,
   480 F.3d 410 (6th Cir. 2007) ................................................................................... 10

*New York v. Niagara Mohawk Power Corp.*,
   263 F.Supp.2d 650 (W.D.N.Y. 2003) ...................................................................... 10

*New York v. Pruitt*,
   2018 WL 2976018 (S.D. N.Y. 2018) ........................................................................ 2

*Sierra Club v. Oklahoma Gas & Electric Co.*,
   816 F.3d 666 (10th Cir. 2016) ......................................................................... 3, 10, 12

*U.S. v. Cemex*,
   864 F.Supp.2d 1040 (D. Colo. 2012) ....................................................................... 8

*U.S. v. Southern Indiana Gas and Electric Co.*,
   2002 WL 1760752 (S.D. Ind. 2002) ........................................................................ 10

*U.S. v. Telluride Co.*,
   146 F.3d 1241, 1248-49 (10th Cir. 1998) ............................................................... 12

*United States v. Murphy Oil USA, Inc.*,
   143 F.Supp.2d 1054 (W.D. Wis. 2001) ................................................................... 11

**COLORADO STATUTES**

§ 25-7-101, C.R.S., *et seq.* ............................................................................................ 1
§ 25-7-114.3, C.R.S. .................................................................................................. 9, 11
§ 25-7-114.4(2), C.R.S. ................................................................................................. 1
§§ 25-7-115, -121, -122, C.R.S. .................................................................................... 1
§ 25-7-123.1, C.R.S. ................................................................................................. 5, 12

**FEDERAL STATUTES**

28 U.S.C. § 2462 ................................................................................................ 3, 5, 10, 12
42 U.S.C. § 7661a(a) ..................................................................................................... 9
42 U.S.C. § 7661a(b)(5)(B)-(C) .................................................................................... 8

42 U.S.C. § 7661b(c) .................................................................................................................. 8

**REGULATIONS**

5 CCR. § 1001-5 ........................................................................................................................ 1
5 CCR. § 1001-5, Part B, §III.B.5 ............................................................................................. 1
5 CCR. § 1001-5, Part B, §III.D.1 ............................................................................................. 1
5 CCR. § 1001-5, Part C, §II.A.1 ......................................................................................... 9, 11
5 CCR. § 1001-5, Part C, §III.B.2 ............................................................................................. 8
5 CCR. § 1001-5, Part C, §III.C ................................................................................................ 1
5 CCR. § 1001-5, Part D, §II.A.1 .......................................................................................... 6, 7
5 CCR. § 1001-5, Part D, §II.A.23.a ......................................................................................... 7
5 CCR. § 1001-5, Part D, §II.A.25.a.(ii) .................................................................................... 6
5 CCR. § 1001-5, Part D, §II.A.25.c ......................................................................................... 6
5 CCR. § 1001-5, Part D, §II.A.44.a ..........................................................................................7

**OTHER AUTHORITIES**

West's Fed. Admin. Prac. §5261 (2020) .................................................................................... 8

## INTEREST OF AMICUS CURIAE

The Air Pollution Control Division of the Colorado Department of Public Health and Environment ("Division") is charged with processing applications for air emissions permits in the State of Colorado. §25-7-114.4(2), C.R.S. The Division processes these permits pursuant to the Colorado Air Pollution Prevention and Control Act ("State Air Act"), §25-7-101, C.R.S., *et seq.*, and Air Quality Control Commission Regulation Number 3 ("Regulation 3"), 5 Colo. Code Reg. §1001-5. The West Elk coal mine ("Mine") is an air pollution source operating in Colorado. In early 2020, the operator of the Mine, the Mountain Coal Company, applied to the Division for a construction permit and an operating permit. Compl. at ¶¶61, 76. As part of the processing of these applications, the Division determines whether the Mine is in compliance with applicable permitting requirements. *See, e.g.,* Regulation 3, Part B, §§III.B.5, III.D.1; Part C, §III.C. The Division is currently processing the permit applications and seeks to protect and defend its ability to exercise its independent judgment about how the Mine should be characterized and what types of permits are required.

The Division also takes enforcement action, as it deems appropriate, against sources that violate requirements of the State Air Act and Regulation 3. The Division may pursue an administrative enforcement case or may go directly to state court to seek injunctive relief and/or penalties. *See* §§25-7-115, -121, -122, C.R.S. In certain cases, the Division may pursue a joint enforcement action with the U.S. Environmental Protection Agency ("EPA") in federal court, alleging violations of the Clean Air Act and federally enforceable provisions of Regulation 3 and asserting supplemental jurisdiction over state law claims such as violations of the State Air Act. The Division can also pursue a direct action in federal court alleging violations of the Clean Air Act, under the Clean Air Act's citizen suit provisions. *See New York v. Pruitt,* 2018 WL 2976018

at *2 (S.D. N.Y. 2018) (exercising jurisdiction under Clean Air Act citizen suit provision over suit brought by the states of New York and Connecticut). As relevant here, the Division currently has an open investigation into the Mine's compliance with the State Air Act and Regulation 3, including permitting requirements.

Both the Division's ability to pursue claims in state court and its ability to pursue claims in federal court are potentially impacted by the Mine's Motion to Dismiss. A ruling under the federal statute of limitations could directly impact Colorado's ability to pursue action against the Mine (or future sources) either in conjunction with EPA or independently under the Clean Air Act citizen suit provision. Further, while the Division's state law claims would be governed by the State Air Act's statute of limitations – which differs from the federal statute of limitations at issue in this case in important ways – the sweeping interpretations sought by Defendants as to the nature of Plaintiffs' claims could have impacts that extend beyond the federal statute of limitations. The Division's two primary objectives in submitting this amicus are to: First, protect the integrity of Colorado's permitting regime, and Second, to preserve Colorado's authority to investigate and prosecute, if necessary, its claims against the Mine.

## SUMMARY OF ARGUMENT

Plaintiffs have sued Defendants, the owners and operators of the Mine, alleging that Defendants constructed and operated the Mine without obtaining the required permits under the Clean Air Act and Regulation 3. Compl. at ¶1. Plaintiffs allege that the Mine required a Prevention of Significant Deterioration ("PSD") permit prior to constructing the Expansion of the Mine. Compl. at ¶79. "Expansion" is defined in the Complaint as the "authorization to expand two of the seven federal coal leases" pursuant to which the Mine operates, and for which construction began in 2020. Compl. at ¶¶46-47. Plaintiffs also allege that the Mine requires, and

has failed to obtain, an operating permit under Subchapter V of the Clean Air Act ("Title V"). Compl. at ¶84.

In their Motion to Dismiss ("Motion"), Defendants argue that the federal statute of limitations, 28 U.S.C. § 2462, bars both of Plaintiffs' claims. As to the PSD claim, Defendants argue that the statute of limitations runs from when the alleged violation "first accrued," and because the Mine was constructed in the early 1980's, the PSD claim is untimely. Motion at pp.4-6. Similarly, Defendants argue that the Title V claim is also barred because the Mine began operating decades ago, so that is when the claim first accrued. *Id.* Defendants rely heavily on the Tenth Circuit decision in *Sierra Club v. Oklahoma Gas & Electric Co.,* 816 F.3d 666 (10th Cir. 2016). The Division submits that the *Sierra Club* case is dispositive of neither of Plaintiffs' claims, though for different reasons.

First, as to the PSD claim, it was unclear to the Division from the allegations of the Complaint at what point Plaintiffs allege that the Mine violated the law by failing to obtain a PSD permit – i.e. whether Plaintiffs' claim that the PSD permit was required upon initial construction or upon some later modification of the Mine. If Plaintiffs' claim were that the Mine engaged in construction – or modification – more than five (5) years ago, *Sierra Club* might have some relevance here. However, in Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Opposition"), Plaintiffs narrow their PSD claim to an allegation that Defendants modified the Mine in 2020 – by constructing the Expansion – without obtaining the necessary PSD permit. The Division agrees with Plaintiffs, and does not believe even Defendants dispute, that if the Mine proposed to undertake in 2020 a modification that triggered PSD review, then a PSD permit was required prior to construction of the modification. However, whether the Mine did, in fact, undertake a modification that required PSD review is, in the Division's opinion, still

*Air Pollution Control Division's Amicus Brief*
3

an open question. The Division is currently investigating, and has not made a determination at this time, whether the Expansion is a modification of the Mine, and, if it is, whether the Expansion has a potential to emit VOC emissions above the "major stationary source" threshold triggering PSD review. The Division urges the Court not to decide, at this early stage in the litigation, whether the Expansion as defined by Plaintiffs constituted a modification that triggered PSD review.

Second, Plaintiffs' Title V claim is different. Plaintiffs' claim is that the Mine has been operating as a major source for Title V "for years." Compl. at ¶76; Plaintiffs' Opposition at p.17, n.15. Plaintiffs contend that a Title V claim is ongoing, and is governed by the repeated-violations doctrine, which would mean that every day the Mine operates without a required Title V permit is a new violation. Plaintiffs' Opposition at pp.16-20. In their Motion, Defendants argue that the continuing nature of the Title V claim is irrelevant, essentially arguing that the *Sierra Club* case has done away with any form of the continuing violations doctrine in the Tenth Circuit. Motion at pp.7-9. The Division submits this amicus in opposition to the Defendants' construction of the law regarding Title V violations.

The *Sierra Club* case is pertinent to this case only insofar as it relates to the viability of a PSD claim under the federal statute of limitations and has no bearing on Plaintiffs' Title V claim. However, if this Court does apply *Sierra Club* to a Title V claim, the Division asserts that the case did not eviscerate the continuing violations doctrine in its entirety, but reinforced an existing Tenth Circuit analysis as to whether the alleged violation is one ongoing violation or a series of recurring violations. If the former, the claim could be barred under the federal statute of limitations. If the latter, the claim would not be barred. The Division's position is, and has always been, that a Title V claim is a recurring violation, for which a claim accrues each and

every day that a source operates without a Title V permit when one is required. Defendants' interpretation of *Sierra Club* is overbroad, legally inaccurate, and would lead to a multitude of absurd results, in contravention of the underlying purpose of the Clean Air Act and the Title V program.

Last, the Division seeks to bring this Court's attention to the difference between the federal statute of limitations in 28 U.S.C. § 2462, which focuses on when a claim "first accrued", and the Colorado statute of limitations in § 25-7-123.1, C.R.S., which speaks to when a violation occurred. Should this Court grant Defendants' Motion, the Division asks this Court to explicitly hold that its ruling is limited in scope to the federal statute of limitations and does not extend to any claims that may be brought by Colorado under the State Air Act statute of limitations.

## ARGUMENT

### I. THE PLAINTIFFS' PSD CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS

As noted above, it was unclear from Plaintiffs' Complaint what action was alleged to have been taken by the Mine without a required PSD permit. However, in Plaintiffs' Opposition, Plaintiffs relinquish any claim that a PSD violation occurred prior to the Mine's construction of the Expansion in 2020. Plaintiffs' Opposition at pp.12-15.[1] Plaintiffs' claim therefore accrued, if at all, in 2020 when the Mine began constructing the Expansion. The federal statute of limitations bars certain claims if commenced more than five years "from the date when the claim first accrued…." 28 U.S.C. § 2462. Plaintiffs' claim, as framed, is not barred by the statute of

---

[1] Colorado is currently investigating whether PSD review was triggered at any earlier time and reserves the right to bring claims against the Mine relating thereto. The Division therefore respectfully requests that this Court not determine whether claims relating to PSD triggering events prior to the construction of the Expansion 2020 are, or are not, timely, and that this Court likewise not address the question of whether PSD violations are ongoing or recurring under the specific language of Regulation 3.

*Air Pollution Control Division's Amicus Brief*
5

limitations <u>if</u> the Expansion was a modification triggering PSD review, with emissions above the PSD threshold. Thus, if the construction of the Expansion without a PSD permit was a violation, the claim to address this violation accrued within the statute of limitations period.

The Division is currently evaluating whether the Expansion constituted a modification of the Mine and, if it did, whether the Expansion had emissions at a level to trigger PSD review. Under Regulation 3, a "new major stationary source" cannot "begin actual construction" without a PSD permit. Regulation 3, Part D, §II.A.1. A "major stationary source" is defined to include "any stationary source that emits, or has the potential to emit, two hundred and fifty tons per year or more" of specified pollutants, including volatile organic compounds (VOC). Regulation 3, Part D, §II.A.25.a.(ii). A "major stationary source" also includes "any physical change" at a non-major stationary source "if the change would constitute a major stationary source by itself." Regulation 3, Part D, §II.A.25.c.

In Plaintiffs' Opposition, Plaintiffs take the position that the Mine was a non-major stationary source at the time of the Expansion, based upon the fact that the Mine operates pursuant to a minor source permit issued by the Division. Plaintiffs' Opposition at p.12. Plaintiffs allege that the Expansion constituted a "physical change" with the potential to emit more than 250 tons per year of VOC emissions, which they allege triggers PSD review under the Clean Air Act and Regulation 3. *Id.* at pp.12-13; Compl. at ¶78-79. However, in their Motion, Defendants correctly point to some conflicting allegations of the Complaint, which, read together, do suggest that Plaintiffs also allege that the Mine had emissions at a level that would classify it as a major stationary source before the Expansion in 2020. *See* Motion at pp.11-12.

The Division believes Defendants' argument is a red herring. The trigger for PSD review does depend on whether the Mine was – at the time of the Expansion – an existing major

stationary source. However, if the Expansion constituted a modification of the Mine, Plaintiffs' claim remains viable regardless of whether the Mine was an existing major stationary source or not - the only question then is what the emissions associated with the Expansion were, and whether they exceeded the applicable threshold. If the Mine was an existing major stationary source, and the Expansion was a "major modification"[2], then the Mine violated Regulation 3, Part D, §II.A.1. If the Mine was a non-major stationary source and the Expansion was a "physical change" with the potential to emit more than 250 tons per year VOC, then the Mine violated Regulation 3, Part D, §II.A.1.

As discussed, the Division is currently evaluating whether the Mine was or became a major stationary source for VOC emissions at any point in its operations. As such, the Division's position is that there does not exist a sufficient record at this time to make this determination. If this Court determines that Plaintiffs' PSD claim is not sufficiently pled, the Division asks that this Court not make any findings as to the status of the Mine as a major stationary source and rest its determination only upon the allegations of Plaintiffs' Complaint.

## II. PLAINTIFFS' TITLE V CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS

### A. Title V Requirements in Colorado

---

[2] To be considered a major modification under Regulation 3, Part D, §II.A.23.a, the modification would need to result in both a "significant emissions increase" and a "net emissions increase." The Division assumes that Plaintiffs' allegation that the Expansion has the potential to emit more than 250 tons per year VOC is sufficient to allege that the Expansion has the potential to result in a "significant emissions increase", which is defined as more than 40 tons per year VOC. *See* Regulation 3, Part D, §§ II.A.23.a and II.A.44.a. The Division takes no position, however, as to whether Plaintiffs' allegation that the Expansion had the potential to emit more than 250 tons per year VOC is sufficient to allege that the Expansion would result in a "net emissions increase" of more than 40 tons per year VOC, as the term "net emissions increase" is defined in Regulation 3, Part D, §II.A.23. The Division is currently evaluating that issue.

*Air Pollution Control Division's Amicus Brief*
7

The overarching purpose of Congress' enactment of Title V was to ensure that every major source, whether new or existing, obtains a Title V operating permit. *See U.S. v. Cemex,* 864 F.Supp.2d 1040, 1044 (D. Colo. 2012) (internal citations omitted); *see also* West's Fed. Admin. Prac. §5261 (2020) ("Title V expands the permitting requirements of the [Clean Air Act] dramatically. It requires all major sources to obtain permits from state air pollution agencies, regardless of whether the source is a new source or an existing source"). It appears to be undisputed for purposes of resolving the Mine's Motion that the Mine is a major source as that term is used in the Title V program – i.e. that as of at least 2019 it has emissions of a regulated pollutant (e.g. VOC) over 100 tons per year. The Clean Air Act and Regulation 3 impose two related requirements upon a major source – (1) to apply for a Title V permit within twelve (12) months of becoming subject to the requirement to have a Title V permit, and (2) to operate pursuant to a Title V permit.[3]

Regarding the first requirement, the Clean Air Act provides that a source that becomes a major source, and therefore becomes subject to the Title V permitting program, must apply for the Title V permit within 12 months of becoming subject. 42 U.S.C. § 7661b(c). Regulation 3 similarly requires a major source to submit a complete application for a Title V permit within 12 months of becoming subject to the requirement to operate pursuant to a Title V permit. Regulation 3, Part C, §III.B.2. Because the requirement is tied to a specific action with a date certain deadline, the Division would agree that in normal circumstances, while the violation

---

[3] There is also a requirement in the Clean Air Act and Regulation 3 that sources renew Title V operating permits at least every 5 years. *See* 42 U.S.C. § 7661a(b)(5)(B)-(C); Regulation 3, Part C, §III.B.6. In the Division's view, this requirement makes even more clear the intent that the appropriate permitting agency be able to ensure a major source operates pursuant to a valid Title V permit at all times.

*Air Pollution Control Division's Amicus Brief*
8

would be ongoing until remedied, the violation is not recurring (i.e. a new claim accrues every day until remedied).

In contrast, regarding the second requirement, the Clean Air Act provides that a person may not "operate an affected source…. except in compliance with a permit issued by a permitting authority under this subchapter." 42 U.S.C. § 7661a(a); *see also* Regulation 3, Part C, §II.A.1 ("Except where specifically authorized by the terms of this Regulation Number 3, Part C, no person shall operate any of the following sources without first obtaining an operating permit in accordance with the provisions of this regulation"). As recognized in the Complaint, Colorado – and specifically the Division – is the permitting authority for Title V for sources in Colorado. Compl. at ¶36; §25-7-114.3, C.R.S. ("no person shall operate…[a major source]… without first obtaining a renewable operating permit from the division."). The Division considers a source's operation in violation of these requirements a recurring violation, which renews each day a source operates out of compliance – i.e. each day a major source operates without a Title V permit.

The Division's interpretation of these Regulation 3 requirements should be given deference. *Citizens for Clean Air & Water in Pueblo & S. Colorado v. Colorado Dep't of Pub. Health & Env't, Air Pollution Control Div.*, 181 P.3d 393, 397 (Colo. App. 2008) (internal citation omitted) (holding that courts "must accord substantial deference to an agency when it resolves issues within its particular area of authority and expertise", and affirming Division's permitting decisions and PSD determinations pursuant to Regulation 3 for new power plant).

### B. The resolution of the timeliness of Plaintiffs' Title V claim is not controlled by *Sierra Club*

The *Sierra Club* case is not a bar to Plaintiffs' Title V claim for two reasons. First, as Plaintiffs point out, Defendants advised the Division of their position that they became subject to

*Air Pollution Control Division's Amicus Brief*
9

the Title V program in 2019. *See* Plaintiffs' Opposition, p.10 and Exh.4. Based upon Defendants' representation to the Division, Plaintiffs' Title V claim would not be untimely because the claim accrued within the previous 5 years.[4]

Second, the timeliness of a Title V claim is not explicitly governed by *Sierra Club*. The *Sierra Club* court holds that construction and modification (which can trigger PSD) are "best characterized as a single, ongoing act." 816 F.3d at 672. At the time same, *Sierra Club* explicitly reinforces the distinction between a claim based on one ongoing act and one based on "a series of repeated violations." *Id.* at 671, n.5; *see also Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Authority,* 480 F.3d 410, 416-19 (6th Cir. 2007) (discussing the difference between continuing violations and "repetitive discrete violations" and finding that a source's failure to apply the required level of control technology was actionable because the claim "manifests itself anew each day a plant operates without BACT limits on emissions").

Courts have repeatedly recognized that Title V violations are distinct from construction permit violations and they have applied the statute of limitations differently. *See, e.g.*, *New York v. Niagara Mohawk Power Corp.,* 263 F.Supp.2d 650, 662-63 (W.D.N.Y. 2003) (finding untimely under 28 U.S.C. § 2462 claims for violation of preconstruction permit requirements but holding that "[c]ontinuing violations are more appropriately enforced through the operating permit requirements."); *U.S. v. EME Homer City Generation, L.P.,* 727 F.3d 274, 285 (3d Cir. 2013) (distinguishing between a PSD violation and a Title V violation); *U.S. v. Southern Indiana Gas and Electric Co.,* 2002 WL 1760752 at *4 (S.D. Ind. 2002) ("It is generally recognized that

---

[4] The Division does not hereby accept that Defendants' representation to the Division is true. The Division received the Mine's Title V permit application in March 2020 and is currently processing that application. As part of the Division's processing of the application, the Division evaluates whether the application was timely submitted – i.e. when the Mine became subject to the Title V program and whether the application was submitted within 12 months of that date.

*Air Pollution Control Division's Amicus Brief*
10

failure to obtain an operations permit is a continuing violation for each day of operation without the permit.") (citing *United States v. Murphy Oil USA, Inc.,* 143 F.Supp.2d 1054, 1081-83 (W.D. Wis. 2001)).

A similar case was brought under the Colorado Hazardous Waste Act, in which the Hazardous Materials and Waste Management Division ("Waste Division") sought to compel a source to apply for and obtain a permit. *See Colo. Dept. of Public Health and Environment, Hazardous Materials and Waste Management Division v. U.S. et al.*, 381 F.Supp.3d 1300 (D. Colo. 2019). In that case, the applicable regulation required operators of surface impoundments, landfills, land treatment units, and waste pile units to obtain a "post-closure" permit. *Id.* at 1309 (citing 6 Colo. Code Regs. §1007-3:100.10). After evaluating the defendants' theory of the case under the analysis in the *Sierra Club* case, the court held that:

> The Regulation compels an owner or operator to obtain such a permit—that obligation continues to exist until the required permit or substitute documents are obtained. Stated differently, the violation is ongoing every day that Basin F is in post-closure status without the required permit.

381 F.Supp.3d at 1310-11. Similarly, here, the State Air Act and Regulation 3 provide that a major source may not operate without a Title V permit. §25-7-114.3, C.R.S.; Regulation 3, Part C, §II.A.1. Assuming Plaintiffs' allegation that the Mine is a major source is true, the Mine violates these laws anew every day that the Mine operates without a Title V permit.

### III. THE FEDERAL STATUTE OF LIMITATIONS DIFFERS FROM COLORADO'S STATUTE OF LIMITATIONS

For the reasons set forth above, the federal statute of limitations does not, at this point in the litigation, act as a bar to Plaintiffs' claims. If, however, this Court were to agree with Defendants' arguments, this Court might dismiss Plaintiffs' claims as untimely under the federal statute of limitations. The Division respectfully requests that due to critical differences between

the federal statute of limitations and the Colorado statute of limitations, this Court explicitly limit any ruling in Defendants' favor to the federal statute.[5]

The federal statute of limitations provides that a claim for penalties must be commenced within 5 years of when the claim "first accrued."[6] 28 U.S.C. § 2462. In contrast, the Colorado statute of limitations provides that certain actions for penalties "not commenced within five years of <u>occurrence</u> of the alleged violation [are] time barred." §25-7-123.1, C.R.S. (emphasis added).[7] The *Sierra Club* court drew a stark distinction between a statute of limitations using the language "first accrued" and a statute of limitations using the language "occurred." *Sierra Club,* 816 F.3d at 673-74. In construing the "first accrued" language, the court in *Sierra Club* found that a violation of the Clean Air Act construction permitting requirements first accrued the day construction started because the plaintiff could have filed suit and obtained relief that same day. *Id.* at 673. However, the court distinguished statutes of limitations that require certain causes of action to be brought within a certain timeframe from when the violation occurred, because a provision using occurrence "allow[s] the limitations period to continue as long as the discriminatory practice 'occur[s]'." *Id.* (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 381 (1982)). Thus, under the analysis used by the *Sierra Club* court, Plaintiffs' claims – if brought by the Division under

---

[5] This request would include any ruling regarding the applicability of the discovery doctrine. *See* Motion at pp.9-10 (wherein the Defendants argue that the discovery doctrine does not toll Plaintiffs' claims). The Division asks only that this Court not make any ruling that might infringe the Division's ability to pursue its claims under state law.

[6] Defendants also seek to apply the statute of limitations to Plaintiffs' claims for injunctive relief based upon the doctrine of concurrent remedies. *See* Motion at p.5. However, it is well settled that the doctrine of concurrent remedies does not apply to the government. *See U.S. v. Telluride Co.,* 146 F.3d 1241, 1248-49 (10th Cir. 1998).

[7] The Division does not concede that §25-7-123.1, C.R.S., would necessarily apply to all potential actions seeking penalties commenced by the Division against a source.

*Air Pollution Control Division's Amicus Brief*
12

state law – would not be time barred.

The Division is not asking this Court to construe the Colorado statute of limitations. The Division is asking only that if the Court should determine that any of Plaintiffs' claims are untimely, that the Court note that its holding applies only to the federal statute of limitations.

Respectfully submitted this 11th day of September, 2020.

        PHILIP J. WEISER
        Attorney General

        */s/ Robyn L. Wille*
        ROBYN L. WILLE, 40915*
        Senior Assistant Attorney General
        Natural Resources and Environment Section
        Ralph L. Carr Judicial Center
        1300 Broadway, 7th Floor
        Denver, CO 80203
        (720) 508-6261
        robyn.wille@coag.gov