## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.  1:20-cv-1342-RM-STV**

WILDEARTH GUARDIANS,
SIERRA CLUB,
CENTER FOR BIOLOGICAL DIVERSITY
and
HIGH COUNTRY CONSERVATION ADVOCATES,

      Plaintiffs,

v.

MOUNTAIN COAL COMPANY, and
ARCH RESOURCES INC.,

      Defendants.

---

## REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT
## PURSUANT TO F.R.C.P. 12(b)(6) BASED ON THE STATUTE OF LIMITATIONS

---

Defendants Mountain Coal Company and Arch Resources, Inc. (collectively, "Arch"), through undersigned counsel, respectfully file this Reply in Support of Motion to Dismiss the Complaint Pursuant to F.R.C.P. 12(b)(6) Based on the Statute of Limitations (Doc. # 18).

### INTRODUCTION

Plaintiffs are in retreat in the face of controlling Tenth Circuit case law requiring dismissal of their claims based on the applicable statute of limitation.  Plaintiffs now concede their PSD construction permit claim for alleged violations predating January 2020 should be dismissed.  Pls.' Opp'n to Defs.' Mot. to Dismiss ("Response"), 2 (Doc. # 32, 7).  They also concede their Title V operating permit claim for violations predating March 2015 should be dismissed.  *Id.*, 17, nn. 13

and 15 (Doc. # 32, 22).   The only remaining question is whether the Court should dismiss Plaintiffs' two claims in whole or in part.

In an effort to salvage a small slice of a claim, Plaintiffs' Response attempts to recast their claims to a more narrow time period, but Plaintiffs cannot dodge the plain language of the statute which provides that the limitations period began to run when the claims "first accrued."  Plaintiffs now argue the alleged "PSD-permit violation is constructing the Mine's expansion . . . in January 2020."  *Id.*, 12 (Doc. # 32, 17).  The claim in the Complaint is, however, titled "Constructing and Operating the West Elk Mine without a PSD Permit."  Compl., p. 25 (Doc. # 1, 25).  Moreover, none of the requested relief is limited to, let alone mentions, any "expansion."[1]  *Id.* at p. 28 (Doc. # 1, 28).  Finally, Plaintiffs do not dispute that, assuming their allegations are true, their second claim for lack of a Title V operating permit accrued two decades ago, nor that the vast majority of the claim is time-barred.  Resp., 17, nn. 13 and 15 (Doc. # 32, 22).  Plaintiffs instead argue the "repeated violations" theory saves the last five years of their claim.  *Id.*  Plaintiffs cite no case that applied their "repeated violations" theory to save any part of a stale Title V operating permit claim. Moreover, the Tenth Circuit expressly rejected the "repeated violations" theory.  *Sierra Club v. Oklahoma Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) ("As explained below, if any form of violation exists beyond the first day . . . it is best characterized as a continuing violation rather than a series of repeated violations.").  Based on the pleadings, both claims should be dismissed.

---

[1] Plaintiffs fault Arch for putting Plaintiffs' amorphous term "expansion" in quotes, but this is Plaintiffs' vague term (all mines expand as the resource is mined; one does not mine the same coal twice), and Plaintiffs have further muddied the term by entirely avoiding the Complaint's defined term "Expansion" in their Response in favor of the new undefined terms "Mine expansion" and "Mine's expansion."

## ANALYSIS

Plaintiffs do not assert there is any material question of fact that precludes the Court from addressing the untimeliness of Plaintiffs' claims. *See* Resp. (Doc. # 32). Plaintiffs also fail to articulate any reasoned basis for the court to ignore Tenth Circuit law which applies a clear statutory bar to their claims. *Id.* The Court can therefore resolve the legal questions before it on Arch's Motion, bearing in mind that Plaintiffs do not dispute that the burden is on Plaintiffs to "establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date" to save their claims. *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1287 (D. Colo. 2009).

### I. Plaintiffs cannot resurrect their stale PSD construction permit claim by recharacterizing it as a different claim.

Plaintiffs are not permitted to recharacterize their claims in response to a motion to dismiss to resurrect a claim that, as pled, fails as a matter of law. *Weaver v. Legend Senior Living, LLC.*, CIV-16-1230-R, 2017 WL 3088416, at *4 (W.D. Okla. July 20, 2017) (rejecting "Plaintiffs attempt to re-characterize their" claim in response to a motion to dismiss). If a recharacterized claim would fail as a matter of law, Plaintiffs should also not be permitted to amend their complaint to properly assert it. *Johnson v. Baxter Healthcare Corp.*, CV 05-357 JH/RLP, 2006 WL 8443599, at *2 (D.N.M. Oct. 23, 2006) ("the Court declines to permit [plaintiff] to amend or 'recharacterize' her claim" because it would fail as a matter of law); *see also Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997) ("A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason.").

#### A. The Complaint does not assert a claim for the so-called "Mine expansion."

Plaintiffs seek to recast their allegation in the Complaint that "Mountain Coal and Arch are unlawfully emitting volatile organic compounds (VOCs) and illegally constructing and operating

the Mine," Compl. ¶ 1, as a different unpled claim "that Mountain Coal violated the Act by beginning (and continuing) to construct the *Mine expansion* without obtaining a Prevention of Significant Deterioration (PSD) construction permit." Resp., 2 (Doc. # 32, 7) (emphasis added). That is simply not the claim asserted in the Complaint. Amicus agrees. Br. of Amicus Curiae Colo. Dept. of Pub. Health & Env't., Air Pollution Control Div. ("Amicus Brief"), 3 (Doc # 38, 7) (The Complaint does not disclose "at what point Plaintiffs allege that the Mine violated the law by failing to obtain a PSD permit."). The Complaint alleges as follows:

Arch is "illegally constructing and operating the Mine." Compl. ¶ 1.

"In 1992, the Mine began using the longwall-mining method . . . . Longwall mining continues today." *Id.* ¶ 44.

Since 2008, Arch has mined the E seam that is still being mined. *Id.* ¶¶ 45, 47.

Mining from the E seam results in a decrease in emissions compared to earlier mining in the B seam. *Id.*, ¶¶ 49, 70, 73.

"Using 2019 actual emissions . . . the Mine's potential to-emit VOCs would be approximately 299.382 tons-per-year . . . . This amount exceeds the major source PSD 250 tons-per-year threshold." *Id.* ¶ 67.

"The Mine's VOC potential-to-emit exceeds 250 tons-per-year using the Mine's methane emissions *in prior years*." *Id.* ¶ 68 (emphasis added).

Plaintiffs' analysis of emissions from the Mine "in 2011 results in VOC emissions of 1,122.1 tons." *Id.* ¶ 69.

"The Mine's potential-to-emit VOCs exceeds 250 tons-per-year." *Id.* ¶ 70.

"The Mine's highest coal production occurred over the same four-year period (2011-2014) as the Mine's highest annual rate of VOC and methane emissions." *Id.* ¶ 73.

"Mountain Coal does not have a major source PSD permit for the Mine." *Id.* ¶ 79.

"Mountain Coal is not operating in compliance with the terms and conditions that would be imposed by a PSD construction permit for *any aspect of the Mine's operations*." *Id.* ¶ 80 (emphasis added).

"*Each and every day Mountain Coal is constructing the Mine* without a PSD construction permit is a separate and distinct violation of the Clean Air Act and Colorado's EPA approved SIP." *Id.* ¶ 81 (emphasis added).

The Complaint consistently alleges that the construction of the West Elk Mine did, currently does, and always will require a PSD permit. *Id.* ¶ 67 (exceeded PSD threshold when it previously mined in the originally leased area), ¶ 79 (exceeds PSD threshold during current mining in the "Expansion area"), ¶ 80 ("After mining in the Expansion area is completed, Mountain Coal will construct and operate mining activities on the Mine's pre-Expansion leased areas without a PSD permit.").

True, in alleging that the West Elk Mine always has and always will exceed the PSD permitting threshold, the Complaint does allege the West Elk Mine currently exceeds the threshold while mining in the so-called "expansion area." *Id.* ¶ 79. But, the PSD construction permit claim is not pled to be limited to the few months of mining in this area since January, 2020. Neither is the requested relief so limited. The Complaint asks, in addition to statutory penalties, that the Court award the following relief:

A. Declare Mountain Coal and Arch violated and are violating the Clean Air Act, Colorado's SIP and air quality regulations, and are required by these laws to secure a PSD construction permit and obtain a Title V *operating permit before constructing and operating the Mine*;

B. Enjoin Mountain Coal and Arch from constructing and operating *so long as the Mine is not in compliance* with the Clean Air Act, including by the obtaining the required PSD construction permit and Title V operating permit;

C. Order Mountain Coal and Arch to apply for and obtain a PSD construction permit.

*Id.* at p. 28 (emphasis added). None of this requested relief is limited to the "expansion area" or the past few months of the West Elk Mine's existence. Despite Plaintiffs' protestations to the

contrary to attempt to save their time-barred claim, they have asserted a PSD construction permit claim for the West Elk Mine as a whole.[2]  The Complaint includes no separate claim for an alleged PSD permit violation for the "Expansion," "Expansion area," "Mine expansion," or whatever else they want to call it now.[3]  The Court should therefore dismiss the first claim as pled in its entirety.

**B.  The Court should not permit Plaintiffs to recharacterize or amend their first claim to assert a separate claim for the "Mine expansion" because it fails as a matter of law.**

Plaintiffs should not be permitted to assert a new unpled "Mine expansion" claim because it fails as a matter of law.  The Complaint references two mutually exclusive regulations addressing modifications of an emissions source: the major-modification regulation that applies to existing major sources, and the physical change to a minor source regulation that applies to minor sources.  Motion to Dismiss, 11 (Doc. # 18, 11).  But, "Plaintiffs are not pursing a 'major-modification' argument here."  Resp., 14 (Doc. # 32, 19).  Instead, Plaintiffs argue that the unpled 2020 "Mine expansion" requires a PSD permit because it is a physical change that itself has the potential to emit above the major-source threshold.  *Id.*, 12 (Doc. # 32, 17) ("Major sources, as defined, include 'any physical change that would occur at a stationary source *not otherwise qualifying as a major stationary source* . . . .'" (quoting 5 C.C.R. § 1001-5:3D.II.A.25.c.) (emphasis added)).

---

[2] Plaintiffs also do not dispute that they are litigating elsewhere about the "Expansion."  *See* Motion to Dismiss, 10, n. 5 (Doc. # 18, 10) (listing these other cases).

[3] The Complaint also establishes that Arch simply continued its ordinary mining operations in the same manner for years without any recent increase in emissions because it unequivocally alleges that the same longwall mining method has been used at the mine since 1992 and the same E seam being mined today has been mined since 2008.  Compl., ¶¶ 44-45.  Moreover, both production and emissions from the mine have decreased, not increased, since the highest alleged annual emissions rate in 2011-2014.  *Id.*  ¶ 73.  Despite Plaintiffs' efforts to now frame their claims as related to an "expansion," the factual allegations are more aptly described as a "contraction."

As Plaintiffs' quoted language shows, and as explained in the Motion to Dismiss, the regulation Plaintiffs now argue Arch violated applies only to sources that do "not otherwise qualify as a major stationary source."  Motion to Dismiss, 11 (Doc. # 18, 11); *see also* Resp., 4 (Doc. # 32, 9) ("Relevant to this case, PSD permits are required when *a non-major source* undertakes a physical change that itself emits or has the potential-to-emit 250 tons per year.  ECF Doc. 1, ¶ 78." (emphasis added)).  Factually, however, Plaintiffs allege that "[u]sing 2019 actual emissions . . . the Mine's potential to-emit VOCs would be approximately 299.382 tons-per-year . . . .  This amount exceeds the major source PSD 250 tons-per-year threshold."  Compl. ¶ 67; *see also id.* ¶ 73 (The West Elk Mine's highest emissions occurred in 2011-14).  The Court must accept these allegations as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Hence, the regulation Plaintiffs argue Arch violated in 2020 does not apply because the West Elk Mine did, on the alleged facts, "otherwise qualify[] as a major stationary source."  5 C.C.R § 1001-5:3D.II.A.25.c.

Amicus states that it, in looking beyond the facts alleged in the Complaint and not limiting itself to Plaintiffs' failed theory, has not made a final determination on Arch's permit application or any alleged violations.  Amicus Brief, 5-7 (Doc. # 38, 9-11).  Amicus therefore asks the Court to avoid making any factual determinations regarding any "expansion."  *Id.*  Arch agrees, and the Court can avoid doing so by dismissing the first claim in its entirety without recharacterizing the claim or allowing Plaintiffs to amend the Complaint to assert their new "Mine expansion" claim that fails as a matter of law.

## II.    The "repeated violations" theory cannot save Plaintiffs' stale operating permit claim.

Recognizing that *Sierra Club* unequivocally held that a citizen suit for a continuing violation of the CAA is time-barred five years after it "first accrues," Plaintiffs cite a number of

cases from other circuits to argue that a failure to obtain an operating permit constitutes "repeated violations" instead.  Resp., 16-19 (Doc. # 32, 21-24).  Plaintiffs are wrong because (A) the Tenth Circuit rejected that the "repeated violations" theory applies to the lack of a CAA permit, and (B) the cases Plaintiffs cite from other circuits either do not support a "repeated violations" theory or do so only in the PSD construction permit contexts where the Tenth Circuit expressly rejected it.

### A. The "repeated violations" theory does not apply to a failure to obtain a CAA permit because such claim is time-barred five years after it "first accrues."

Plaintiffs acknowledge that their operating permit claim first accrued two decades ago when the regulations requiring such permit became "effective on October 16, 2000,"[4] but they now seek penalties for the past five years based on their "repeated violations" theory.  Resp., 5 (Doc. # 32, 15).  *Sierra Club*, however, expressly held that an ongoing failure to have a permit during the activity to be permitted is a continuing violation for as long as the activity continues— not repeated violations.  816 F.3d at 671-72 (holding construction permit claim was time-barred because although constructing without a permit was a continuing violation until it finished, and it finished within the limitations period, the claim "fist accrued" when construction began, which was outside of the limitations period).  Hence, Plaintiffs' operating permit claim is time-barred because the operations Plaintiffs allege required a permit began two decades ago.

Plaintiffs' theory that "[u]nder the repeated-violations doctrine, Mountain Coal commits the same recurring violations of the Act each day it operates the Mine . . . and thus the accrual date for the limitation period starts anew with each violation," Resp., 2 (Doc. # 32, 7), is not the law in

---

[4] Plaintiffs have now limited the start of the alleged operating permit violation in response to Arch pointing out that the temporally unlimited claim in the Complaint is unmeritorious in part because there was no operating permit requirement before 2000.  Motion to Dismiss, 6, n. 4 (Doc. # 18, 6).

this circuit.[5]  The Tenth Circuit rejected that the "repeated violations" theory applies to a failure to have a CAA permit.  *Sierra Club,* 816 F.3d at 671-72.  It reasoned that a "single violation continues over an extended period of time when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, as opposed to conduct that is a discrete unlawful act."  *Id.* at 672 (quotation marks omitted).  "In other words, one violation continues when the conduct as a whole can be considered as a single course of conduct."  *Id.* (quotation marks omitted).  The Tenth Circuit therefore rejected that the "repeated violations" theory applies to the failure to have a CAA permit because "[i]f the limitations period under § 2462 reset each day, the statutory term 'first' would have no operative force*." Id.* at 674.

The fact that operations are ongoing each day does not distinguish this case from *Sierra Club* because the Tenth Circuit concluded therein that, similar to ongoing operations, "constructing or modifying a facility is best characterized as a single, ongoing act."  *Id.* at 672.  In fact, it is precisely the continuing affirmative conduct of operating (allegedly without a permit) that makes it a continuing violation.  *Id.*  Just as it is the act of operating without a permit that is unlawful,

> [i]t is the act of constructing itself that is unlawful . . . .  "Construct" is an "active verb [ ] that ha[s] force after . . . construction . . . has begun."  Thus, "construct" should not be read to encompass a disjointed series of discrete acts of construction.  To "construct" is an ongoing project.  Accordingly, if we accept Sierra Club's argument that some form of violation exists beyond the first day of modification, it must be characterized as a single, continuing violation.

---

[5] Plaintiffs incorrectly argue "courts, including the Tenth Circuit, view illegal construction as a singular act and a singular violation."   Resp., 16 (Doc. # 32, 21).  In *Sierra Club* defendant "OG & E maintain[ed] that the failure to procure a PSD permit generated a single claim for one day's penalty that accrued only on the first day of modification," but the court concluded it "need not consider whether OG & E's position is correct because we conclude that Sierra Club's claim for penalties is time-barred for other reasons."  816 F.3d at 671 (treating violation as continuing).

*Id.* (brackets and second and third ellipses in original) (citations omitted).  This reasoning applies with equal force if the Court substitutes the word "operate" for the word "construct" because it is also an active verb that has force after operation has begun.  Thus, operating without a permit must likewise "be characterized as a single, continuing violation." *Id.*; *see also,* Amicus Brief, 10-11 (Doc # 38, 14-15) ("It is generally recognized that failure to obtain an operations permit is a continuing violation for each day of operation without the permit." (quoting *U.S. v. Southern Indiana Gas and Electric Co.,* 2002 WL 1760752 at \*4 (S.D. Ind. 2002)).[6]

After *Sierra Club*, the Tenth Circuit has recognized that its holding applies generally to claims alleging failure to obtain a required permit for continuing activities.  *Sec. & Exch. Comm'n v. Kokesh*, 884 F.3d 979, 984–85 (10th Cir. 2018) (analyzing both the *Sierra Club* rationale and the distinction between continuing and repeated violations, and ultimately holding that the repeated misappropriation of funds at issue therein "was not a continuing omission to act in compliance with a duty, as in *Sierra Club* (*failure to obtain a permit*)." (emphasis added)).[7]  As this Court

---

[6] Amicus, however, ignores this statement when it elsewhere in its brief confusingly argues it is a "recurring violation" and appear to be arguing in favor of Plaintiffs.  Amicus Brief, 9 (Doc. # 38, 13).  But, a "recurring" violation is a continuing violation—not separate violations—so amicus' citations do not support Plaintiffs.  *See Donaldson v. Am. Banco Corp., Inc.*, 945 F. Supp. 1456, 1467 (D. Colo. 1996) ("Three factors are relevant to whether a party has shown a continuing violation through a series of related acts: . . . (2) whether the acts are recurring versus isolated.").

[7] Plaintiffs also cited *Hamer v. City of Trinidad*, 924 F.3d 1093 (10th Cir. 2019), but it is inapposite because it involved repeated denials of access to a wheelchair user in violation of the ADA, and it interpreted "Colorado's general two-year statute of limitations" that does not contain the critical "first accrues" language the Tenth Circuit relied on in *Sierra Club*.  *See Colorado Dep't of Pub. Health & Env't, Hazardous Materials & Waste Mgmt. Div. v. United States*, 381 F. Supp. 3d 1300, 1310 (D. Colo. 2019) (distinguishing *Sierra Club* because it analyzed "critically different language than" a Colorado statute of limitations that did not include the "first accrues" language).

recognized, even under a different statute of limitations, *Sierra Club* controls if the statute of limitations at issue is based on when the claim "first accrues":

> [T]he statute states that 'every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action **first accrues.**' 28 U.S.C. § 2401(a) (emphasis added). This language is nearly identical to the statutory language analyzed in *Sierra Club*, which has been discussed above. There, the Circuit analyzed 29 U.S.C. § 2462, which requires any action for failure to obtain a pre-construction permit to be brought 'within five years from the date when the claim **first accrued**.' *Id.* at 671 (emphasis added).

*Colorado Dep't of Pub. Health & Env't, Hazardous Materials & Waste Mgmt. Div.*, 381 F. Supp. 3d at 1315 (emphasis added by the court).  Hence, in the Tenth Circuit "failure to obtain a permit" is a continuing violation for the purposes of Section 2462 for as long as the unpermitted activity continues—it is not a series of repeated violations.  *Kokesh*, 884 F.3d at 985; *Sierra Club,* 816 F.3d at 671 ("[I]f any form of violation exists beyond the first day . . . , it is best characterized as a continuing violation rather than a series of repeated violations.").

Plaintiffs unsuccessfully attempt to distinguish the most analogous case that applies *Sierra Club* to operations, *Grand Canyon Trust v. Energy Fuels Res. (U.S.A.) Inc.*, 269 F. Supp. 3d 1173, 1201 (D. Utah 2017).  Plaintiffs argue that "*Grand Canyon* does not concern unlawful operations (ECF Doc. 18 at 9), because the regulatory prohibition targeted building impoundments only." Resp. 15, n. 12 (Doc. # 32, 20).  Plaintiffs then quote only a portion of the regulation at issue in *Grand Canyon* as follows: "40 C.F.R. § 61.252(a)(2)(i)) ('no new conventional impoundment may be built unless…')."  *Id.* (Plaintiffs' ellipses).  The regulation, however, continues as follows: "unless it is designed, constructed *and operated* to meet one of the two following management practices: (i) . . . The owner or *operator* shall have no more than two conventional impoundments, including existing conventional impoundments, *in operation at any one time*."  40 C.F.R. §

61.252(a)(2) (emphasis added).  Moreover, the regulation is titled "Subpart W. National Emission Standards for Radon Emissions from *Operating* Mill Tailings."  *Id.* (emphasis added).  Contrary to Plaintiffs' argument, the *Grand Canyon* court held that the title of the regulation "indicates 'operating' is key to the scope of the regulation." 269 F. Supp. 3d at 1201.

Factually, the *Grand Canyon* plaintiff alleged that the operator violated the two tailings impoundment limitation when it constructed a new impoundment while it had five other "tailings impoundments in operation."  *Id.* at 1193.  The court rejected that the new impoundment constructed within the limitations period was a tailings impoundment because it was not an "*operational* tailings impoundment" as it was used for evaporation instead.  *Id.* at 1194 (emphasis added).  Citing *Sierra Club*, the court held that even if the two tailings impoundment limitation applied to the remaining five impoundments, the claims for those first accrued upon "the first use of an existing cell as a tailings impoundment."  *Id.* at 1193-94.  Because all five were first operated as tailings impoundments more than five years ago, any claim that they exceeded the two tailings impoundment limitation was time-barred pursuant to *Sierra Club*.  *Id.* at 1194.  Hence, Plaintiffs' attempt to distinguish *Grand Canyon* falls flat, and that court's application of *Sierra Club* to a CAA regulation of "operations" is highly instructive.  This Court should similarly hold that Plaintiffs' operating permit claim here is time-barred because it first accrued decades ago.

**B.  Most cases Plaintiffs cite from other circuits reject their "repeated violations" theory.**

Plaintiffs cite several cases from other circuits to distinguish *Sierra Club*, but they do not support the "repeated violations" theory that each day without a permit is a separate, distinct violation.  *Southern Indiana Gas & Electric Co.* addressed a construction permit claim—not an operating permit claim—but the court noted that "[i]t is generally recognized that failure to obtain

an operations permit is a continuing violation." 2002 WL 1760752, at *4. Similarly, *New York v. Niagara Mohawk Power Corp.* did not address an operating permit claim, but the court noted that "*operating* a facility after it was modified without first obtaining the necessary construction permit may constitute a continuing violation of the relevant *operating permit . . . .*" 263 F. Supp. 2d 650, 662 (W.D.N.Y. 2003) (emphasis in original). Likewise, *Sierra Club v. PPL Montana LLC* considered whether "Montana's SIP makes it unlawful for a modified source to operate without the state equivalent of a PSD permit, thereby making Plaintiffs' continuing violation theory a viable one." 2014 WL 12814425, at *10 (D. Mont. May 22, 2014). Finally, *United States v. Duke Energy Corp.*, another construction permit case, held "that Duke Energy's alleged failure to obtain a preconstruction permit constitutes a continuing violation." 278 F. Supp. 2d 619, 652 (M.D.N.C. 2003).[8] All agree with the Tenth Circuit that if the failure to obtain a permit is not a one-time violation (as several held for PSD permits), it is a continuing violation—not repeated violations.

Plaintiffs (and amicus) cite only two cases, the widely rejected *National Parks Conservation Association, Inc. v. Tennessee Valley Authority*, 480 F.3d 410 (6th Cir. 2007) ("*TVA*") and *Sierra Club v. Portland General Electric Co.*, 663 F. Supp. 2d 983 (D. Or. 2009), that could arguably support a "repeated violations" theory. Resp. 18-19 (Doc. # 32, 23-24). But, other opinions Plaintiffs cite reject or acknowledge the widespread rejection of the *TVA* decision. *PPL Montana LLC*, 2014 WL 12814425, at *7-8 (listing numerous circuits that have rejected *TVA*'s rationale, and referring to the *TVA* decision as "the Sixth Circuit's divergent decision"); *Midwest Generation*, 694 F. Supp. 2d at 1006, n. 6 (rejecting *TVA*, and pointing out that the *TVA*

---

[8] Plaintiffs also cite *U.S. v. Midwest Generation*, wherein the court addressed only the construction permit claim, but it expressly rejected both the repeated violations theory and the continuing violation theory. 694 F. Supp. 2d 999, 1004-05 (N.D. Ill. 2010).

dissent would also reject the repeated violations theory in favor of one continuing violation). Both *TVA* and *Portland* addressed construction permits—not operating permits. *TVA*, 480 F.3d at 420 (Batchelder, J., dissenting) ("The TVA has an operating permit and no one in the present case has alleged any violation of it."); *Portland Gen. Elec. Co.*, 663 F. Supp. 2d at 994 (adopting *TVA*). The Tenth Circuit expressly rejected the repeated violations theory in the same PSD construction permit context, so these cases are contrary to the law in this circuit. *Sierra Club*, 816 F.3d at 671-72 (rejecting Sierra Club's argument that the defendant "committed a new, discrete violation on each day of unpermitted modification, which we refer to as a theory of 'repeated violations'").

Essentially, Plaintiffs urge this Court to ignore the Tenth Circuit's controlling opinion in *Sierra Club* because it was a construction permit case and instead apply "the Sixth Circuit's divergent decision" although that is also a construction permit case. Plaintiffs have cited no case applying the *TVA* rationale to an operating permit claim, so there is no basis for the Court to diverge from the Tenth Circuit's opinion in *Sierra Club*. In short, either construction and operating permits are similar,[9] in which case *Sierra Club's* rejection of the "repeated violations" theory is binding on this Court, or they are dissimilar, in which case Plaintiffs have failed to cite a single case applying a "repeated violations" theory in the relevant context so *Grand Canyon* provides the only persuasive authority on point.[10] Either way, the Court should decline to apply the widely rejected

---

[9] While Plaintiffs argue that construction and operating permits are dissimilar to distinguish *Sierra Club*, they also argue that the particular violation "does not change the analysis or outcome" to argue that *TVA* is applicable. Resp., 17 (Doc. # 32, 23). They cannot have it both ways.

[10] Nor has amicus cited any regulation or case adopting the "interpretation" it argues for here. Amicus Brief, 8-9 (Doc. # 38, 12-17). Amicus' argument is divorced from any factual determination and is not promulgated through rulemaking. *Id.* at 7 (Doc. # 38, 11) ("there does not exist a sufficient record at this time to make this determination.). It is merely a litigation position on a pure legal question that is not entitled to deference. *Vaquero-Cordero v. Holder*, 498

14

rationale in the Sixth Circuit's *TVA* opinion, and instead apply binding or persuasive authority from this circuit to hold that Plaintiffs' operating permit claim is time-barred.

Finally, Plaintiffs' policy argument fails. Arch agrees with the argument in Section III of the Amicus Brief that this Court need not and should not interpret the different state statute of limitations that governs amicus' administrative and state court enforcement actions. Amicus Brief, 11-13 (Doc. # 38, 15-17). Likewise, the Motion to Dismiss does not ask the Court to rule on amicus' (or the EPA's) ability to require permits under federal law. *See Sierra Club,* 816 F.3d at 676 (noting that "the concurrent remedy doctrine does not apply to the government."). Hence, applying *Sierra Club* would not, as Plaintiffs argue, immunize Arch from permit requirements.

## CONCLUSION

The applicable limitations period began when Plaintiffs' claims "first accrued" decades ago. Controlling Tenth Circuit law requires dismissal pursuant to the five-year limitations period in 28 U.S.C. § 2462. The "repeated violations" theory proposed in Plaintiffs' Response has been soundly rejected in this circuit, and the Complaint simply does not contain a separate PSD construction permit claim for a so-called "Mine expansion" that could survive apart from the time-barred claim for the West Elk Mine. *Sierra Club v Oklahoma Gas & Elec. Co.*, 816 F.3d 666 (10th Cir. 2016) therefore requires dismissal of both of Plaintiffs' claims.

Respectfully submitted this 16th day of September, 2020.

---

Fed. Appx. 760, 762 (10th Cir. 2012) ("We review questions of statutory interpretation de novo," and defer to an agency's interpretation only when made in its lawmaking capacity or through an adjudicatory proceeding that binds the agency in future cases); *S. Utah Wilderness All. v. Dabney*, 222 F.3d 819, 828 (10th Cir. 2000) ("agency policy statements, like litigation positions, do not usually warrant deference"). Moreover, the issue before the Court is interpretation of a general federal statute of limitations, 28 U.S.C. § 2462, that amicus is not charged with administering, so it gets no deference. *Id.*

WELBORN SULLIVAN MECK & TOOLEY, P.C.:

*s/ Keith D. Tooley*
Keith D. Tooley, #16243
James W. Sanderson, #2402
Julie A. Rosen, #40406
Jens Jensen, #47471
Welborn Sullivan Meck & Tooley, P.C.
1125 - 17th Street, Suite 2200
Denver, CO  80202
Telephone:  303-830-2500
Fax:  303-832-2366
Email: ktooley@wsmtlaw.com
jsanderson@wsmtlaw.com
jrosen@wsmtlaw.com
jjensen@wsmtlaw.com

*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2020, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P 12(b)(6) BASED ON THE STATUTE OF LIMITATIONS** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

Neil Levin, Esq.
Public Justice
4404 Alcott Street
Denver, CO  80211

David Nicholas, Esq.
20 Whitney Road
Newton, MA  02460

*Attorneys for Plaintiffs*

*s/ Lesley J. Hayter*
Lesley J. Hayter